Oral argument not to exceed 15 minutes per side. Mr. Ellison, you may proceed for the appellant. Good morning. Philip Ellison appearing on behalf of the appellant. I've reserved three minutes for the appellant. Three minutes for rebuttal today. Your Honor, in preparation for the hearing today, I looked up President Joe Biden's Facebook page. And of course we're here talking about social media. And his description of his Facebook page is the 42nd President of the United States, husband to FLOTUS. I'm sorry, I just spoke 46th. We better not get that wrong, right? So, 46th President of the United States, husband to FLOTUS, proud father and grandfather, building back. I've cited in the record Governor Whitmer. I'm from Michigan. This case is from Michigan. I've cited Governor Whitmer. Governor Whitmer says in her Twitter and both Facebook pages, 49th Governor of Michigan, proud mom. In this case, we have a situation where I wish that a city manager who is a government official had kept a clean line between his public activities and his private activities. But he didn't. But public officials rarely do, right? They often put up, I mean, it's part of who they are, that they're parents, that they're husbands. Hopefully none of us are public officials first. And so is there anything wrong with putting that? I mean, that crossover defines people as much as it defines government actors. I have zero problem with him posting personalized things. The phrase I use in my briefing is retail politics, right? I don't see any problem with that, much like I cite the example of President Biden sending out a Valentine's Day tweet. It's supposed to present not only the office, but the person who holds that office is a good community, wholesome person as an individual. Take it the other way, right? Even as a public official, you have personal space, and that includes in your personal space, your job. And so you could have, imagine two Twitter pages. One is at POTUS for President Biden, and at POTUS is run by his office. It's official. It would say all those things as his description. And then he has Joe Biden at Joe Biden. And it also says he's the President, the 46th President of the United States, and husband, and proud grandfather, et cetera. And the whole point I make of all of this, to kind of start in this dramatic fashion, is to say, where is the line between those two? And that's where I'm getting at today, is that we have, I think the best two cases to have, I think, to model yourselves on is Davison and Night First. I mean, those are the two cases that I think deal with this new age of social media where we're combining our retail politics with our social media outputs in this respect. So I struggle with that. So let's talk about this, because we all agree Facebook is a private platform, right? And one of the things you've said is, when does what a private or public person do become state action? Correct. And so if he was holding a speech in his backyard, and it was closed off, and he just let people in he liked, but he was giving a speech about his job, would that be state action? So he's giving a speech about COVID, since a lot of this had to do with COVID. And he's saying, here are the things I'm going to do, I'm going to put cones up so you can get takeout. But you've got to be in the backyard, you've got to be six feet apart, and only people that agree with me are welcome. I think he's going to, he's, can I say to you definitively standing here, which way that's going? But if I could tweak your analogy just a little bit, it would be as if Mr. Freed had had that speech, and was talking about matters of public concern, had invited the public, and then when during a question and answer period, when a question was asked that he didn't like, he kicked the person out from continuing the rest of the speech. All these different compounds that presidents have. Sure. And they obviously could kick someone out, it seems to me, they didn't like. But, you say kick them out, I mean, are we kicking them out because of things? What if they ask a question and they say, you're gone? And secret service, get them out of here. I think we have a First Amendment problem there, I think you would, because So explain to me what, where that line is. Well, that's what this, and I'm smiling and you're smiling because we both know this is the heart and the crux of this entire case right now. The problem that I see right now is that this case is not exactly like Davison, and this case is not exactly like Night First. Right. And this court has not spoken real directly on this issue as to the social media component on this. So, to answer your question is, is that I think the answer is, is that once you provide, when you take a social media account, and you're not just talking about your job, but you have put the monitor of your office onto that. And in this case, I guess I would start it from, maybe I should start it from the other direction and come back to what I'm saying is, I don't have a problem with these father to Lucy on his Facebook page, or husband to whoever. What turns his private page into a public? I think what changes it is, one, he's a public, he self-designated himself as a public figure on his Facebook account. I know he said that he changed it, and I cannot find for the life of me where, I've looked through Facebook's history and things to find where this idea of Subpoena Facebook? Ever tried to subpoena Facebook? That is almost an impossible task to do in today's world. Did you try? We did not try. We did not try. What if he put, why wouldn't it be more relevant if he put at city manager? In other words, he had at James Freed. Right. And then you look at the identifiers on the page we have, some things cut your way, some things cut his way. In other words, what I'm struggling with, just to be candid with you, is where exactly this line is. In other words, when do courts say tips to state action? I think when he put on there that this Facebook account was registered to the city hall with a city email. Not his own city email, but the general generic city email. How you register and identify that page publicly is the basis by which, not what you say, but what your account. I'm sorry to interrupt you, but a lot of public officials register things not to their home for security reasons. I'm not saying he did that here. I'm just saying that that, to me, at least isn't as telling as the community comments at Port Huron. I don't understand that, so maybe you can explain it to me. But I assume he's putting it as his contact info, something at the city, that he's listing the city website. I'm curious, on the city website, he had his Twitter. I was just going to point to that. Did he have his Facebook? I could not find any evidence of where he had linked to his Facebook page, no. But he's using the same James Freed name in his Twitter handle there as, again, something he's posted to the official city website page. Now, you take this one step further and say, okay, we look at just whether the account itself, which has all, I guess in legal terms, the indicia of a public account in that respect. Admittedly, he does post personal things. There's no dispute about that. Your test is that we look at the entire page, to tally the circumstances. We don't look at the specific posting. Well, there's two ways I think you could look. And this is what I was going to advocate today. And you've got a clean, open path in front of you right now as being the fact that Sixth Circuit has not spoken on this. The Fourth Circuit took this column approach, as I referenced in the brief, and said, okay, we look at the center column commenting. You could look at the entirety of the account, which I think would be a fair approach to take in this respect. The other thing you could do is you could do it on a post-by-post basis. When you have designated your... The problem I have with that is, let's say I had a Facebook page, or any judge did, and none of us that I know of do. But let's say we did, and I posted pictures of my family all the time. And then every so often there was an opinion I was proud of, and I posted that. Does that make that state action where then people can comment, you're a moron, what are you thinking? I mean, whatever they want. In other words, it turns that part of it, what I envision as a private page where I want to share something I accomplished at work, with my friends, into... You see what I'm saying? I'm struggling with this as much as you are, because I'd like to come to this court to say, here's a clean, bright-line test that you should apply in these circumstances. And the problem is that there is no clean, bright-line test. And I'm going to come back, if I can just circle back to your question in a second. In Davison, there was acknowledgment in Davison that there were private posts made by the chairperson for that particular Facebook page that was in dispute. Simply having personal things, whether it's dogs like Governor Whitmer, like I referenced, or Valentine's Day, I don't think that is the test. So can I relate a point? I think your friend on the other side counted up the posts and said that 70 or 80% of them were personal in nature. Do you agree with that? I do not agree with that. And I'm glad you asked that question, because things, for example... You've done your own count. I don't have my own count in that, because one of the things that happened was, is right after we sued on this, they shut the Facebook page off. So assuming they were right, say 70, 75, 80% of these are personal posts, have nothing to do with government or politics, is that enough to make it a... I don't think it does. And that's why I would suggest to you the secondary approach would be is to look at a comment-based. When you combine... So you're abandoning, then, the page-wide test? No. I've offered, as I mentioned earlier... Okay, well, let's talk about the page-wide test. Okay, all right. The page-wide test, that doesn't do it for... I think the page-wide test, because of the way he registered and presented this page publicly out there, establishes it as a... With the language they use as the power... And that would overcome if 95% of his posts were about his kids' soccer games. Well, I would have to say that... I guess let me put it this way. When you have a post, for example, that I'm at the Rotary Club meeting, right? He designated that as a private post. That's not a private post. He's the city manager there at the Rotary Club. Well, what about if 100% of his posts were personal, but he registered it that way? I don't know. I mean, we're speculating here, because this court has never spoken one way or the other on that. I think what you look at is, again, we look at the totality of the circumstances. I think if I would say that if I was to advocate to this court a test, it would be the more you put on the page with the power, prestige, or monitor of your office, the more likely it is, much like the Donald Trump case, when he turned his Twitter handle into a communication method when he became president, the more likely it becomes a state action in that respect. I don't think... What about Campbell? So I thought Campbell was the most analogous case from the 8th Circuit. I think that cuts against you. Campbell is a... That's not what you mentioned. Well, Campbell... None of these tests are directly... Not to evade your question, but none of these cases are directly on point with these particular... I think it was a man before, went to office. Most of the posts were about non-official duties. Right. But again, I think the difference there, Campbell didn't have the same level of monitor of his office that we have here in this, which is registered to City Hall, registered to a generic email. When he was here, he was even logging in to the account through his own email address, but had a city email address as his public contact point on the page. He didn't want to give out his personal email. Well, then... But city officials, public officials do that all the time. But it's not his email. It was the city's email, not his email on the account, not his city email account. So I see I'm out of time. I would like to reserve the rest of my time for rebuttal unless you have any other questions. Okay. Judge Guy. Thanks, Chad. I have just one question. When you have one of these hybrid accounts, is it always one thing or the other, or does it revolve around the nature of what was posted or taken down? Is it always just a matter of counting? I don't understand. It seems to me there are some things you could do. You could have an official page that you have as part of your office, but post nothing on it but family matters. And to me, that would not be a state act. It would not be a state action when you did that. That's a far more tougher question than obviously what's presented here, and I think there would be a fair basis to say that that's not state action in that respect if every single post was personal. But the problem here is that this particular post, in Facebook world, you have to have a private profile before you can open a public page. And so by actually taking the next step and designating himself as a public actor combined with the way he registered at the city hall, with the city email, with all of that, plus making posts that are tied to his job as city manager and announcing city policies in that respect, I think crosses over the line and creates this into a state action. Thank you. Thank you. Thank you, counsel. You'll have your full time. Thank you, I appreciate it. Good morning, Your Honor. May it please the Court. Victoria Ferris appearing on behalf of James Freed. Your Honor, I want to pick up with your question on where the line is drawn here. There's no state action here because every single action that Mr. Freed took on his Facebook page could have been done by a private citizen. And when we look at his anything related What about the fact that he linked the city website, he linked the email, all those things? I mean, a private person couldn't do that. No, that's incorrect, Your Honor. Respectfully, They could put at PortHuron.org and all these things? Correct, that email address is available on the city website. There's no verification process for adding a website or adding an email address to your account. Adding an address even, I could add No, but like I couldn't go put PortHuron.org and Community Center at PortHuron on there. I couldn't have on the city page my Twitter profile. Right, his Twitter profile was on the city page but not Facebook. How do we know that? Do we have a screenshot at the time? Yes, a copy of the webpage is contained in the record and there's no link to the Facebook page. I'm sorry, is that a copy of when he had a Facebook page? Because my understanding is he no longer does. Right, at the time the lawsuit was filed, he did have a Facebook page and the copy of that webpage was produced by the appellant. So yes, that would have been at the time. The Facebook page was actually deactivated by Facebook later, which was a concern that Justice Thomas had in the night at this point was against President Biden. Justice Thomas had a big concern about why are we applying the First Amendment to a forum that can unilaterally discontinue a webpage? And this happened to President Trump on Twitter. What if there was an app POTUS page that was passed down, I think there is, from President to President and run by the office even though it's on a private platform? Are you saying there's no state action there? That was Justice Thomas' concern and that kind of gets to a different issue. But when we're just looking at state action and looking at Mr. Freed's Facebook page, this won't go to the next city manager. His login is James Freed. What about my hypo? I'm sorry. Right. I mean, there is a POTUS Twitter account. That's absolutely correct. And so it would be state action, right? Even though Twitter could ban it, even though Facebook could ban it, you're conceding that that's state action? In the other cases, they have found that an official government page has been state action. The city of Port Huron does have two official government pages, Port Huron Police. And you concede those are state action? That would be state action. Okay. So here we have what may be a private page, what may be a public page, but he posts things that relate to his job. Why aren't at least those posting state action? Because first, two parts to this question. When we're looking at state action, we're looking at his operation of Facebook as a whole. When we get to, and Davison, the Fourth Circuit looked at this, and this is after they determined there was state action. Then they moved along to the forum analysis. And that's when they distinguished the, you know, did the column approach that. I agree with Justice Thomas. This doesn't fit neatly into our traditional analysis of the first, of how we look at state action and forums. So why not break it up, I'm just curious, by posting and say, look, on your private posts, Linkey can't come and post anything. And if he does, you can delete him, you can ban him. But on your public posts, if he does so, meaning by private public, I mean on your work-related posts, you have an obligation not to ban speech you don't like based on viewpoint. When we look at the state action, what the Supreme Court has said about state action, looking at the Brentwood case, it has to be fairly attributable to the state based on normative judgment. This is fact specific. We're looking at the totality of the circumstance. So we're not looking at post by post. We're looking at the totality of this Facebook page, and not one function. That's what Brentwood says. So when does it flip? What's the line? So that goes to what the district court looked at, where all the factors that were from the Second Circuit, the Eighth Circuit, excuse me, the Eleventh Circuit, they didn't look at the Campbell cases, that came out later, took all of those factors and looked at Facebook as a whole. But what the district court did that was appropriate was the district court looked at the functional features of the Facebook page, put more emphasis on that, as opposed to those visual features, what we discussed were the community comments and the city address. And by the functional features of the case, you can see the difference between Davison, Phyllis Randall, and her exact line was she solicited input from her constituents on the page. She said, I really want to hear from Loudoun citizens, etc. If you're going to have back-and-forth conversations with me, keep in mind they may be FOIA-able. James Freed did nothing of the sort on this Facebook page. He never opened it up to back-and-forth conversation. He never solicited any input from city residents. He never asked for anything, and he never got anything. This 70% number that you put forward, I think, did that include posts before he took office? No, Your Honor, we did not have any. We don't have access to the Facebook page. This Facebook page was actually created in 2008 when he was in college. We did not get that from the Facebook download from Facebook. So these were all from the time he was the city manager of the city of Fort Huron. So if it's 50-50, is it just a 50-50 metric? No, I don't think it's a percentage or this many posts or this many posts. I think it's more on what is the point of these posts and what are you doing on these posts. When we have President Trump hiring and firing people on Twitter, when we have President Trump, social media director saying, President Trump communicates directly with you, the American people, the purpose of his Facebook, or in President Trump's case, excuse me, his Twitter, but the purpose of his Twitter account then is direct communication with people. Why shouldn't we look at whether they make it a public page or a private page? I mean, you can make it private on Facebook and then he can let his friends see and not make it public. Once they make it public as a public official and post public government functions on there, why shouldn't we assume at that point that's the line? In other words, you have control. If you're a public official and you don't want the world to see, you don't want it to be state action, make it private. That would be an easy line to draw. Or you have two pages on public. Sure, and Mr. Freed did not have two pages. There was some argument in the record that he has a private Facebook page, James Freed 3192. That is not the same person. James Freed created this account in 2008. It was a private Facebook page. He was in college. There's a 5,000 friend limit, though. Mr. Freed was a city manager in another Michigan city before he came to the city of Port Huron. 5,000 friends seems pretty big on a private page. You can then have a public page that everyone I mean, doesn't that cut against you? Does he really have 5,001 friends or is it 5,001 constituents? You see what I'm trying to go at is why not say to public officials either don't post stuff about your job or have two pages, a public page and a private because I looked up a bunch of senators and they have like four pages. And so it seems to me you can do that and then disentangle this problem. This goes back to your initial point, I think, Your Honor, when you said looking at his daddy to Lucy, husband to Jesse and city manager of the city of Port Huron. That's how he describes his page. He's a person. He has a career. Why is that any different that he adds his career as part of his identity that he's also a dad and also a father? The problem I'm having is maybe not this case. It's like where do we as a court draw a line so it's clear to people here's where you can ban, here's where you can delete, here's where you can exercise viewpoint discrimination and here's where you can't. And if we're saying it gets down to looking at what email they use, what this they use, what that they use, it's going to be every case is going to be different. It seems to me a bright line is important in these contexts and why wouldn't when you as a public official make your social media account public and you can make it public and only post about private stuff and post about your job, though you transform that page into state action. But your honor, then you would not be able to have more than 5,000 friends. And I mean, once you have the page since 2008, it'd be easier. Anytime there's a page, it's automatically public. You can't have a Facebook page and be private at the same time. So if you were going to have a private... You can have a private page with less than 5,000... Correct. And I think it's just the terminology. That would be a profile at that point. But you're correct. You can maintain a profile. So why can't they do that? Go ahead. Do you have a question? I apologize. Why couldn't he have a private... Why can't we just say, get a profile if you want it to be private and then you can do whatever you want on the profile. But as soon as you as a government official open it to the public and start posting things about your job... You can have a public one, a page, but you can't post about your job. But as soon as you start posting about the job, at least those postings are state action. But posting about the job and the actual function of the... When we're looking at the back and forth communication, that's where it transforms into something that a private individual can't do. Mr. Fried was posting things like the COVID statistics, which 105 other people also posted. He's not doing anything at that point that Joe Smith and the city of Port Huron can't also do. He's posting his letters. He's posting his press releases. As an official. No, that's not correct, because he did not make any of the official announcements on Facebook. He's reposting press releases that were... What other ways did he communicate with the public? I think that's a fair point. President Trump uses Twitter account as a primary way to communicate with the public. So what ways did he communicate with the public other than the Facebook page? We see this on his Facebook page, actually. He communicated through the local newspaper. There's plenty of times where he is reposting things that he shared with the local newspaper. He has press releases. He has his web page. And if you look at the city manager web pages...  On the city, yes. But you're correct, Your Honor. If you click on About or something, you find him, find a biography, and then you can communicate back and forth with him there? No, he never opened up any online communication back and forth at all. And when we look at his city website, it says that Mr. Freed maintains an open-door policy. And if you would like to contact with him, please contact his office at any time. It doesn't say please contact him on Facebook at any time. But for mass communication, he needs to reach a lot of people. How does he do that typically? His press releases and through the local newspaper and other media outlets. So if those things are duplicated on Facebook, sort of as long as it's initially issued some other way? Because the Facebook could just be an added means to reach other people, right? Public officials like to reach a lot of people, so they may often use different means or mediums to reach them. Maybe not everyone's reading the local paper, but they're checking Facebook. I'd agree with that. But if he had a city manager web page, and that's where he was initially promulgating this information, that would make sense. But he doesn't. Just as in the Campbell case, he's promoting himself as a professional. And that's what Mr. Freed, or Mr., excuse me, the state representative was doing in that case. And the court in Campbell said, occasional stray messages that might conceivably be characterized as conducting public business is not enough to transform the page away from its original incarnation. And here we have the page's original incarnation being a 2008 college account, personal account, post of going to Rotary Club events, going to Chamber of Commerce events. These are all posts that are made to show, promote James Freed as an individual. That's why the page is called James Freed. That's why his Twitter account is called James Freed. It's him as a person. It's not James Freed, city manager of the city of Port Huron. It's James Freed as a person. But your friend, I mean, your friend on the other side makes a fair point that the Rotary Club can cut both ways. A lot of these things can cut both ways. But there's no, I'm sorry. So it's a little hard to, I mean, it's funny to think a court has to count them all up and discern, put them in one category or another. That's a really difficult one. We're just looking at sort of a threshold way to decide this. And some of these posts will go both directions. There's no evidence in the record that any of those activities are part of his official duties. Is it a good thing to do as a... Is a city manager going to a local club or organization that supports the community? Well, when we're looking further on those, I mean... Well, suppose I thought that did. I mean, so we have disagreements. So maybe a reasonable person may or may not. But it's just very difficult to look at the individual posts and sort of count them up and say this many on this side of the line, this many on the other. Why is it enough that if there's got this indicia, some official, you know, some official indicators and there's at least some quantity of posts, more than one, you know, more than a minimum amount that are about basically public matters, why isn't that enough? Because it's pretty easy to stay on the other side of the line. Judge Tapar gave some guardrails how you could stay on the other side of the line. But your friend on the other side basically says if you have those indicia, you have a few, you know, at least enough things to show that you're occasionally commenting on public issues, that's enough. He's not commenting on public issues, though. I mean, there's... When we look at the back and forth communications in the Davison case, she's back and forth with her constituents. He's issuing directives and then putting them up on Facebook. Right? He's promoting his, like, Governor Whitmer said X, here's what I'm going to do in his letter, and then he puts it up on Facebook. So it can't be that you can avoid state action by writing everything in a letter and then posting it. No, and I'm not suggesting that, Your Honor. And I think it turns more to when we look at the difference between President Trump firing Cabinet members, hiring Cabinet members... No, I get that. Let's set President Trump aside for a second. When he takes a letter, and what he's doing is he's issuing orders through a letter. It says it is so ordered when he did this. And then the way, especially during COVID, the way he's getting it out is by social media. Right? So instead of holding a press conference with 200 people and saying, I'm shutting down the streets and I'm going to put cones up so you can go to the restaurants and do drive-through and pick up, this is the way he's communicating his message. He's putting it in letter form or order form, but then he's putting it up to communicate it to the public. That's not accurate, Your Honor, because he does hold press conference and announces these things. They're not being announced on Facebook alone. It's really important that his friends belt suspenders in case his friends haven't read the newspaper. They'll get it from his Facebook page. It's not only in the newspaper, though. It doesn't seem like that's the reason. I'm sorry? It doesn't seem like that's the reason that he really wants to make sure his friends know, his 5,000 friends know about this government policy. I think that it's, at this point, he is putting this out there to promote himself professionally. He's not putting it out there to engage in official state action. And I do see my time is up. Judge Guy, any questions? No, thank you. Judge Reitler, any further? Thank you, Your Honors. Sometimes, as lawyers, we focus so hard on the other case precedent that sometimes we can miss the clear line that we can draw between the example you've just provided, which is the personal. And I would like to call the Court's attention, if I could, page ID 1152, which defines, that explains the difference between profiles and pages. And I know, if you indulge me for just 10 seconds, a profile is a place on a page where you can share information about yourself. And this is Facebook's announcement. A page, on the other hand, are places on Facebook where artists, public figures, businesses and brands and organizations and non-profits can connect with their fans and their customers. Here, he could have a profile, private profile, with all the friends that he has on that, or a page, or a profile on this, and then have his official page that gives him the monitor of the public figure. So let me ask you, the banning is irrelevant, right? You make something of the banning, but the banning is irrelevant, because as a public page, you can still see it. It's the non-ability to post comments. The banning is the inability to post comments. That matters. It's not that he can't see the speech. That's correct. That's correct. But you also deny the ability, once you're banned, anyone else's response to that would also be precluded. Because oftentimes, Mr. Fried would respond to the Facebook pages, or Facebook comments himself. So a lot of the Facebook, they have these guidelines. Facebook and all these social media companies have all these guidelines. Everyone ignores them, right? Because the reality is, plenty of private people have public pages. I mean, I have one. I mean, I'm a business. I have one that's a public page. But I also have a private profile, too. But my point is, there's a lot of people out there that have public pages that aren't public officials or fit any of those categories. I'm not sure I agree with that. Let me just nuance it. I agree, a lot of people have profiles out there, which is the personal spot that people post about their work and their things. That is public? And it's public, and it's publicly available. But they don't have, I'm not sure I agree with you that all these people have pages. And I want to make sure that distinction with the citation of the record is very important going forward. What about your friend on the other side saying this page he set up while in college, which just proves it had nothing to do with this. It was private at the outset. So he did not set up the page. He set up his profile. And he alleges that at some point, which I can't find any proof of, that he switched it when he was getting near, apparently the most interesting man in the world with almost 5,000 friends, switched it to a Facebook page. But then why wouldn't you? I mean, this is where the subpoena of Facebook is critical. I recognize it may be hard, but at least you could tell me you tried. I mean, you could have this information. So the problem is that the Facebook page we thought was deleted at the time, because that's what we were told by Mr. Fried by his counsel in there. And so we didn't pursue that because we assumed it was gone at that point. As I come to learn, there is an ability to deactivate. And that's part of the... And I don't want to get into it. We don't need to get into it now about the ability to have it, whether it's moot or not. But as I understand, the page may still be available, but we didn't know that at the time. We've all been operating, including all the depositions that were taken, we're all done assuming that the Facebook messages, everything in his account was gone forever. And that's how we operated the case. Any other questions? Judge Guy. Well, only this. What you quoted relative to the Facebook rules and definitions and page and profiles, those weren't designed by Facebook, though, with an idea as to what would be state action or what would not be state action. They have to do with numbers and content and so forth and so on. But to say you have a page as defined by Facebook doesn't automatically make it state action. I would agree with that, but I'd caveat that to say, though, is that those standards are what the users of Facebook have come to understand what the difference is for an expectation for what is the difference between a profile versus a Facebook page. And so as a Facebook user myself, a profile is personal. A Facebook page is something more, a business, a public figure, a politician. And I encourage you to look up any of the other, I mean, you mentioned you looked up some senators. Look up some governors. Look up the president. I mean, these all mirror that same exact policy that Facebook delineates between these two different types of accounts. Judge Guy, anything further? No, thank you. Thank you for your time today. Thank you very much. Interesting case. It will be submitted.